IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>CAROLINA FLUID HANDLING<br>INTERMEDIATE HOLDING CORP.,<br>et al.,<br><br>Debtors. | ) Chapter 7<br>) Bk. No. 09-10384 (CSS)<br>) (Jointly Administered)<br>)<br>) Adv. Pro. No. 11-50393 (CSS)<br>) |
| ALFRED T. GIULIANO,<br><br>    Appellant,<br><br>v.<br><br>ALMOND INVESTMENT COMPANY,<br><br>    Appellee. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 12-494-SLR<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

At Wilmington this  $\{\mathcal{8}\text{th}$  day of March, 2013, having considered appellant's

appeal and the papers submitted in connection therewith;

IT IS ORDERED that said appeal is denied, for the reasons that follow:

1. **Background.**¹  Sometime prior to February 6, 2009, Fluid Routing Solutions,

Inc. (together with affiliate debtors, "the debtors")² and Almond Products Inc. ("Almond")

entered into a supply agreement ("the supply agreement") whereby Almond agreed to

_____

¹The background is taken from the bankruptcy court's published opinion. *In re Carolina Fluid Handling Intermediate Holding Corp.*, 467 B.R. 743 (Bankr. D. Del. 2012).

²The three other debtors are:  Fluid Routing Solutions Intermediate Holding Corp.; Fluid Routing Solutions Automotive, LLC (f/k/a Mark IV Automotive LLC); and Detroit Fuel, Inc.  (D.I. I)

supply the debtors with certain goods and services related to the debtors' fuel systems business.

2. On February 6, 2009 ("the petition date"), the debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. As of the petition date, the debtors owed Almond $518,786. On the petition date, the debtors filed a motion seeking approval of, among other things: (1) bid procedures; (2) procedures regarding the assumption and assignment of executory contracts, including cure amounts; (3) sale procedures; and (4) other related relief regarding the sale of the debtors' fuel system business ("the sale motion"). The sale motion proposed the sale of the debtors' fuel systems business to the stalking horse bidder, FRS Holding Corp. ("the purchaser").

3. On February 27, 2009, the debtors filed a notice of filing schedules to asset purchase agreement ("the disclosure schedule notice"). The disclosure schedule notice attached schedules, including: (1) a (proposed) list of executory contracts to be assumed; (2) a (proposed) list of trade payables to be assumed by the purchaser; and (3) a (proposed) list of excluded assets and contracts. The supply agreement was listed as an excluded asset/contract.

4. Subsequently, and as authorized by an order of the bankruptcy court, the debtors requested that Almond enter into a "trade agreement" whereby the debtors would provide a critical vendor payment of unpaid pre-petition claims to Almond and, in turn, Almond would relinquish certain rights and agree to continue to supply goods and services to the debtors. Almond declined to accept the proposed trade agreement and was not treated as a critical vendor by the debtors. Nonetheless, the debtors and Almond commenced negotiations over the assumption and assignment of the supply

agreement to the purchaser, as well as the cure amount that would be due on

assumption.

5. In accordance with the order approving bid procedures ("the bid procedures

order"), the debtors filed the notice of debtors' intent to assume and assign certain

leases and executory contracts and fixing of cure amounts ("the cure notice"). The

supply agreement was not listed in the cure notice.

6. On March 19, 2009, the debtors and Almond executed a first amendment to

supply agreement ("the amendment to supply agreement"). The amendment to supply

agreement established the amount of Almond's cure claim ($367,385.57) and provides,

in part, that the debtors

> shall use [their] best efforts to obtain bankruptcy court
> approval of the assumption and assignment of the supply
> agreement (which includes the amendment to supply agreement)
> to the [purchaser] . . .
>
> The debtors shall . . . amend their schedule of assumed executory
> contracts filed in conjunction with the sale of their fuel systems
> business to reflect the assumption and assignment, including
> cure obligations . . .
>
> [A] cure payment shall be made to Almond by the purchaser . . .
> in the aggregate amount of $367,385.57 . . .
>
> The product pricing set forth in the supply agreement shall be
> reduced by two percent (2%) effective immediately upon the entry
> of an order by the bankruptcy court approving the assumption and
> assignment . . .
>
> For the purpose of claims arising under 11 U.S.C. §§ 544–551,
> all amounts owing by the debtors to Almond shall be deemed paid
> in full . . .
>
> The effectiveness of this amendment [to the supply agreement]
> shall be contingent upon the entry [by] the bankruptcy court of an
> order approving the assumption and assignment pursuant to the

3

terms of this amendment [to the supply agreement].

7. Days later, the debtors filed the notice of debtors' entry into certain cure

amount agreements with respect to debtors' intent to assume and assign certain leases

and executory contracts ("the cure agreement notice"). The cure agreement notice

attaches the amendment to supply agreement with Almond and states as follows:

> PLEASE TAKE FURTHER NOTICE that, agreements (collectively,
> "the cure amount agreements") have been entered into by and
> between the debtors and the following non-debtor counter-parties
> (collectively, "the cure amount agreement counter-parties") to
> certain assumed and assigned contracts: [including] Almond
> . . . . The cure amount agreements, copies of which are annexed
> hereto as Exhibit A, among other things, propose to resolve
> certain issues raised by the cure amount agreement counter-parties
> with respect to the assumption and assignment of the respective
> assumed and assigned contracts to which they are a party.

8. The debtors then filed a notice of filing of amendment to asset purchase

agreement ("the notice of APA amendment"). The amendment attached to the notice

of APA amendment states:

> Section 4: Amendment of schedules to the asset purchase
> agreement. Sellers and purchaser hereby agree and acknowledge
> each of the updates to the schedules to the asset purchase
> agreement set forth in the notice dated March 23, 2009 provided
> by purchaser to sellers attached hereto as Exhibit A[3] . . .

_____

[3]Exhibit A states:

Pursuant to section 2.1(c) of the asset purchase agreement, purchaser
hereby makes the following revisions to schedule 2.1(a)(v) (assumed
executory contracts): (a) The following two items are hereby added
to schedule 2.1(a)(v) under the heading "assumed contracts:" . . .
[The] supply agreement, dated April 2, 2008, between Almond Products,
Inc. and Fluid Routing Solutions, Inc. (as amended by first amendment
to supply agreement, dated March 13, 2009, between Almond Products,
Inc. and Fluid Routing Solutions, Inc.).

The Exhibit also provides that the Almond supply agreement is removed from the

4

9. On March 26, 2009, the bankruptcy court entered an order approving the sale of the debtors' fuel systems business ("the sale order").[4]

10. After the sale order was entered, Almond received payment in the amount of $367,385.57, which satisfied its cure claim in accordance with the amendment to supply agreement and the sale order. Upon closing of the sale of the debtors' assets, Almond and the purchaser began performing under the supply agreement (as amended).

11. On October 2, 2009, the bankruptcy court converted the debtors' bankruptcy cases to Chapter 7, and appointed Alfred T. Giuliano as the Chapter 7 trustee for the debtors' estates[5] ("the trustee").

---

list of excluded assets and contracts.

[4]The sale order provides:

Subject to the terms of the agreement and the occurrence of the closing date, the assumption by the debtors of the assumed contracts and the assumed leases and the assignment of such agreements to the purchaser, as provided for or contemplated by the agreement, be, and hereby is, authorized and approved pursuant to §§ 363 and 365 of the Bankruptcy Code.

Cure amount agreements (collectively, the cure amount agreements") have been entered into by and between the debtors and the following non-debtor counter-parties (collectively, the cure amount agreement counter-parties") to certain assumed contracts: . . . Almond Products, Inc . . . The cure amount agreements, copies of which are annexed hereto as Exhibit 1, among other things, propose to resolve certain issues raised by the cure amount agreement counter-parties with respect to the assumption and assignment of the respective assumed contracts to which they are a party.

[5]The estate of Carolina Fluid Handling Intermediate Holding Corp. (D.I. 1)

12. In February 2011, the trustee filed a complaint for avoidance and recovery of preferential transfers against Almond (the adversary proceeding).[6] The trustee sought recovery of $1,445,659.77, as preferences under 11 U.S.C. §§ 547 & 550 and requested permission from the bankruptcy court to conduct discovery with respect to the facts surrounding the assumption and assignment of the supply agreement. In response, Almond filed its answer with affirmative defenses and moved for summary judgment, asserting that the supply agreement was assumed and, pursuant to case law and 11 U.S.C. § 547(b)(5), the trustee was precluded from avoiding alleged preferential transfer made between the debtors and Almond.

13. On March 14, 2012, the United States Bankruptcy Court for the District of Delaware ("the bankruptcy court") granted summary judgment to Almond and denied the trustee's request for discovery. On April 18, 2012, the trustee filed a timely notice of appeal. (D.I. 1)

14. **Standard of Review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of

---

[6]*Alfred T. Guliano, Chapter 7 Trustee of Carolina Fluid Handling Intermediate Holding Corp. (f/k/a/ Fluid Routing Solutions Intermediate Holding Corp.) v. Almond Investment Company d/b/a Almond Corporation*, Adv. No. 11-50393-CSS.

the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).

15. Decisions regarding discovery management and the scope of discovery are discretionary and reviewed under an abuse of discretion standard. *In re Kiwi International Air Lines, Inc.*, 344 F.3d 311, 323 (3d Cir. 2003); *In re Mazzocone,* 200 B.R. 568, 573 (E.D. Pa.1996).

16. **Analysis.** By this appeal, the trustee contends that the bankruptcy court erred in granting summary judgment in favor of Almond and in denying its request for discovery. (D.I. 8) The trustee asserts that the bankruptcy court opinion, with respect to the sale of assets and acceptance and rejection of executory contracts, violates notice and hearing requirements regarding the assumption and/or rejection of executory contracts or leases. By allowing the supply agreement to be assumed and assigned by debtors without reasonable notice and an opportunity for a hearing, the trustee argues that the bankruptcy court violated procedural and constitutional notions of due process. The trustee further claims that allowing the attachment of the supply agreement to the sale order denied interested parties due process of law.

17. In response, Almond argues that the sale order expressly authorized

assumption of the supply agreement and, unless the sale order is vacated or otherwise

set aside in the underlying bankruptcy case (pursuant to Fed. R. Civ. P. 60(b)), the

trustee is precluded as a matter of law from satisfying 11 U.S.C. § 547(b).

18. A pre-petition transfer may be avoided if the requirements of 11 U.S.C. §

547(b) are satisfied. That section provides:

> Except as provided in subsections (c) and (l) of this section, the trustee
> may avoid any transfer of an interest of the debtor in property-
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor
> before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-
>> (A) on or within 90 days before the date of the filing of the
>> petition; or
>> (B) between ninety days and one year before the date of the filing
>> of the petition, if such creditor at the time of such transfer was an
>> insider; and
> (5) that enable such creditor to receive more than such creditor would
> receive if-
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by
>> the provisions of this title.

The burden of proof rests with the trustee to prove each and every one of these

elements in order for a transfer to be avoidable as a preference. 11 U.S.C. § 547(b) &

(g).

19. The United States Court of Appeals for the Third Circuit has held that §

547(b)(5) cannot be satisfied if, during the case, an executory contract was assumed or

assigned pursuant to a court order. *In re Kiwi International Air Lines*, Inc., 344 F.3d

311, 323 (3d Cir. 2005). Court approval is a prerequisite to a debtor's assumption of an

8

executory contract. In order to "insure that a debtor has the opportunity to assess the advantages and disadvantages of assuming a contract, assumption must be approved. It cannot be presumed." *In re University Medical Center*, 973 F. 2d 1065, 1077 (3d Cir. 1992). A contract is not assumed unless it is specifically listed on the list of assumed executory contracts in the purchase agreement, filed when the sale order was entered, and referred to in that sale order. *In re IT Group, Inc.*, 331 B.R. 597, 604 (Bankr. D. Del. 2005).

20. The court finds that the bankruptcy court's factual findings are supported by the record and are not clearly erroneous. The documents of record establish that, although the supply agreement was not on the initial list of contracts to be assumed, it was specifically listed in a notice attached to the sale order, and it was described in the list of contracts to be assumed and assigned included in the amendments to the asset purchase agreement. Accordingly, the supply agreement was assumed and assigned in the sale order under the express terms of the sale order and the asset purchase agreement.

21. The court further finds that the bankruptcy court's decision is consistent with the above authority which was applied correctly to the facts of record. Significantly, the trustee did not present any material evidence to buttress the claims of nefarious conduct and due process violations.[7]

22. With respect to discovery, the court concludes that the bankruptcy court acted within its discretion in denying the trustee's request to conduct discovery. The

---

[7]For example, the trustee did not present any supporting documents or affidavits from any interested party suggesting a notice or hearing deprivation.

9

bankruptcy court's finding that the trustee was seeking discovery to set aside the sale order, rather than to pursue the adversary action, is supported by a record devoid of substantiated claims and the absence of any motion to amend or rescind the sale order.

23. **Conclusion.** For the reasons explained, the bankruptcy court's decision is affirmed and the appeal therefrom is denied.

United States District Judge